## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| NOVIA COMMUNICATIONS, LLC<br>33 East Market Street<br>Corning, NY  14830 | :<br>:<br>:<br>: | Case No. _____<br><br>Judge _____ |
| Plaintiff, | :<br>: | **COMPLAINT WITH**<br>**JURY DEMAND ENDORSED HEREON** |
| -vs- | :<br>: | |
| JESSE WEATHERBY<br>11770 Haynes Bridge Road<br>Suite 205<br>Alpharetta, GA  30004 | :<br>:<br>:<br>:<br>: | John C. Barron (0003233)<br>Gregory H. Wagoner (0076132)<br>SHUMAKER, LOOP & KENDRICK, LLP<br>1000 Jackson Street<br>Toledo, Ohio  43604<br>TEL:  (419) 241-9000 |
| and | :<br>: | FAX:  (419) 241-6894<br>Email: jbarron@slk-law.com |
| COMMUNITY BROADCAST GROUP, INC.<br>PO Box 351896<br>Toledo, OH  43635 | :<br>:<br>: |       gwagoner@slk-law.com<br><br>Attorneys for Plaintiff,<br>Novia Communications, LLC |
| and | :<br>: | |
| ORION MEDIA MANAGEMENT, LLC<br>11770 Haynes Bridge Road<br>Suite 205<br>Alpharetta, GA  30004 | :<br>:<br>:<br>:<br>: | |
| Defendants. | : | |

\* \* \*

For its Complaint against Defendants Jesse Weatherby ("Weatherby"), Community Broadcast Group, Inc. ("CBG") and Orion Media Management, LLC ("Orion"), Plaintiff Novia Communications, LLC ("Novia") states the following:

## PARTIES

1. Plaintiff Novia is a New York limited liability company with its principal place of business in the State of New York.

2. Defendant Weatherby is an individual who is a resident of the State of Georgia.

3. Defendant CBG is a Florida corporation with its principal place of business in the State of Ohio.

4. Defendant Orion is a Delaware limited liability company with its principal place of business in the State of Georgia. Based upon information and belief, Weatherby is the sole member and owner of Orion.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Pursuant to 28 U.S.C. §1391(b)(2), venue is proper in this Court because a substantial part of the events giving rise to this claim occurred in this judicial district and a substantial part of the property at issue is located within this judicial district.

## FACTUAL BACKGROUND

7. CBG is the licensee and operator of a Class A Television Station, WMNT-CD (formerly WMNT-CA), Channel 48 ("WMNT"), located in Toledo, Ohio.

8. Weatherby is the majority owner of CBG and, at all relevant times, had effective control of CBG's business operation and interests.

9. On August 21, 2013, CBG and Novia entered into an Option Agreement. The Option Agreement gave Novia the option to purchase certain assets of CBG that were necessary, used or useable in conjunction with CBG's operation of WMNT.

10. On August 21, 2013, CBG executed an Amended and Restated Promissory Note in favor of Novia.

11. Novia loaned CBG $125,000 pursuant to the terms of the Amended and Restated Promissory Note. (August 21, 2013 Amended and Restated Promissory Note; Ex. 1.)

12. CBG represented to Novia that it required the monies under the Amended and Restated Promissory Note to continue its business operation and pay salaries and other business expenses.

13. On July 16, 2014, Novia timely exercised its rights under the Option Agreement to purchase WMNT's Station Assets, as such term is defined in the Option Agreement.

14. On August 31, 2014, Novia also entered into a Promissory Note with Orion. (August 31, 2014 Promissory Note; Ex. 2.)

15. On October 1, 2014, Novia and CBG entered into an Asset Purchase Agreement to purchase certain of the Station Assets of CBG, as such term is defined in the Asset Purchase Agreement. (October 1, 2014 Asset Purchase Agreement; Ex. 3.)

16. After execution of the Asset Purchase Agreement, Novia then engaged in an ongoing effort to close on the Agreement, including taking steps with the Federal Communications Commission ("FCC") to approve an application requesting the FCC's consent to the assignment of the licenses, permits and other authorizations issued by the FCC associated with WMNT from CBG to Novia ("FCC Assignment Application").

17. On October 1, 2014, CBG executed a second Promissory Note in favor of Novia, in the amount of $10,525. (October 1, 2014 Promissory Note; Ex. 4.)

18. CBG represented to Novia that it was necessary to enter into the second Promissory Note in order to pay certain obligations that CBG owed to the FCC, which obligations were required to be satisfied in order for the FCC to process the FCC Assignment Application.

3

19.     During the period described in Paragraph 16, Weatherby repeatedly indicated to Novia that CBG intended to close on the Asset Purchase Agreement.

20.     In addition to Weatherby's verbal representations, CBG made the following representations in the Asset Purchase Agreement:

> Section 1.3  <u>Liabilities</u>.  The Station Assets shall be sold and conveyed to Buyer free and clear of all liabilities, debts, mortgages, liens, deeds of trust, security interests, pledges, restrictions, prior assignments, charges, claims, defects in title and encumbrances of any kind or type whatsoever ("Liens") …

> Section 4.3  <u>No Conflict</u>.  The execution, delivery and performance of this Agreement by Seller and the consummation of the Subject Transaction by Seller will not conflict with or violate or result in any breach of or default under, result in any termination or modification of, or cause any acceleration of any obligation under, any contract to which Seller is a party or by which it is bound, or by which the Station or the Station Assets may be affected, or result in the creation of any Lien upon the Station Assets; or violate any judgment, decree, order, statute, law, ordinance, rule or regulation applicable to Seller, the Station or the Station Assets.

> Section 4.6  <u>Certain Station Assets</u>.  The Station Assets constitute all of the assets, with the exception of capital and the Excluded Assets, necessary to conduct the present operations of the Station as currently operated.  Seller has good, valid and marketable title to all of the Station Assets, and such title will be delivered free and clear of all Liens at the Closing …

> Section 4.7   <u>Contracts</u>.  *Schedule 1.1(d)* hereto contains a true and complete list of all Assumed Contracts.  Except as described on Schedule 1.1(d).  Seller is not in violation or breach of, nor has Seller received in writing any claim or threat that it has breached any of the terms and conditions of, any Assumed Contract.  Except as described on Schedule 1.1(d), neither Seller nor, to Seller's knowledge, any other party to any Assumed Contract is in material default thereunder or material breach thereof.  Seller has delivered to Buyer a true, accurate and complete copy of each Assumed Contract, including all amendments, supplements or modifications thereto or waivers thereunder.  Except as set forth on *Schedule 1.1(d)*, neither the execution and delivery by Seller of this Agreement nor the consummation by Seller of the transactions contemplated under this Agreement requires the consent of any party to an Assumed Contract or any other agreement or obligation of Seller, whether or not such agreement or obligation is to be assigned to or assumed by Buyer, and any material Assumed Contract requiring consent to assignment by a third party is identified on *Schedule 1.1(d)* with an asterisk.

> Section 4.10  <u>Disclosure</u>.  No provision of this Agreement (including the Schedules and Exhibits attached hereto), or any document or agreement delivered or made pursuant to the terms of this Agreement, relating to Seller, the Station or the Station Assets, knowingly contains or will contain any untrue statement of a material fact or omits or will omit to state

4

a material fact required to be stated in order to make the statement, in light of the circumstances in which it is made, not misleading.

Section 4.11  <u>Absence of Litigation: Taxes</u>.  Seller is not subject to any order, writ, injunction, judgment, arbitration decision or decree having binding effect and affecting the Station or the Station Assets or which restrains or enjoins the transactions contemplated hereby, and no such proceeding is pending.  There is no material litigation pending by or against, or to the best of Seller's knowledge, threatened against Seller which relates to the Station or could affect any of the Station Assets.

Section 4.12  <u>No Other Agreements to Sell the Station; No Undisclosed Liabilities</u>.  Seller has no legal obligation, absolute or contingent, to any other person or firm to sell, assign or transfer the Station Assets (whether through a merger, reorganization or sale of stock or otherwise) or to enter into any agreement with respect thereto.  To the knowledge of the Seller, there are no liabilities or obligations of Seller with respect to the Station that will be binding upon Buyer after the Closing Date.

Section 12.6  <u>Further Assurances</u>.  … The parties shall cooperate fully with each other and with their respective counsel and accountants in connection with any steps required to be taken as part of their respective obligations under this Agreement.

21. Based on CBG's and Weatherby's representations, Novia entered into a Local Marketing Agreement with CBG on March 5, 2015.  Pursuant to the terms of the Local Marketing Agreement, CBG agreed to provide programming for broadcast on WMNT and to collect revenues associated with the commercial announcements airing thereon.  In exchange, Novia agreed to reimburse certain expenses that CBG incurred as necessary to operate WMNT.  (March 5, 2015 Local Marketing Agreement; Ex. 5.)

22. Novia has spent over $90,000 under the Local Marketing Agreement to cover the ongoing expenses incurred by CBG in operating WMNT.  WMNT would not have been able to pay its obligations but for the funds Novia has provided under the Local Marketing Agreement.

23. Upon information and belief, Weatherby has personally taken money Novia provided under the Local Marketing Agreement to cover personal expenses not related to the operation of WMNT.

24. After the execution of the Asset Purchase Agreement, Greenhill & Co., LLC published a report ("Greenhill Report"), commissioned by the FCC, addressing the potential valuation for television stations, such as WMNT, that participate in an upcoming spectrum auction to be conducted by the FCC.

25. While there is significant uncertainty surrounding the valuation of television stations as set forth in the Greenhill Report, the report suggests that WMNT's spectrum may have significantly increased in value over the amount Novia was obligated to pay under the Asset Purchase Agreement.

26. CBG and Weatherby made several misrepresentations and breached the Asset Purchase Agreement, which prevented the Asset Purchase Agreement from timely closing.  CBG and Weatherby did this in an effort to obtain the increased value of the subject spectrum rights as reflected in the Greenhill Report.  These material misrepresentations and breaches include, but are not limited to:

(a) Representing that there were no Liens upon WMNT's assets when CBG and Weatherby knew, or should have known, of a potential Lien by CBG's minority shareholders;

(b) Failing to present the assets of CBG to Novia free of claims and Liens; and,

(c) Failing to fully cooperate with Novia in order to effectuate the timely closing of the Asset Purchase Agreement.

27. CBG's and Weatherby's actions and inactions caused some of the minority shareholders of CBG to file with the FCC, on November 14, 2014, a Petition to Deny the FCC Assignment Application ("Petition to Deny").

28. In addition, the same minority shareholders of CBG also filed *A Renewed Mind, et al. v. Jesse Weatherby, et al.*, United States District Court for the Northern District of Ohio,

Western Division, Case No. 3:15-cv-00165 (Honorable David A. Katz) on January 27, 2015 ("Litigation").

29. The minority shareholder plaintiffs in *A Renewed Mind, et al. v. Jesse Weatherby, et al.* asserted claims against CBG and/or Weatherby of Breach of Fiduciary Duty (Count I), Fraud and Misrepresentation (Count II), Conspiracy (Count III), Conversion (Count IV), Breach of Contract (Count VI) and Negligence (Count VII).

30. The filing of the Petition to Deny and the Litigation by certain minority shareholders caused the FCC to withhold processing of the FCC Assignment Application until the Litigation was resolved. FCC approval of the FCC Assignment Application is a condition precedent to closing on the Asset Purchase Agreement.

31. On December 24, 2015, CBG provided written notice that it was attempting to terminate the Asset Purchase Agreement because the closing did not occur within 270 days after October 1, 2014, the date the Asset Purchase Agreement was executed. (CBG Termination Letter; Ex. 6.) This was the first time CBG provided any indication to Novia that it intended to terminate the Agreement.

32. CBG's attempt to terminate the Asset Purchase Agreement violate the terms of the Asset Purchase Agreement.

33. Specifically, the Asset Purchase Agreement provides that the 270 day termination provision "… shall not apply to any party whose failure to fulfill any material obligation under this Agreement shall have been the cause of, or shall have resulted in, the failure of the Closing to occur prior to such date." (Asset Purchase Agreement, Section 12.1(b); Ex. 3.)

34. CBG's and Weatherby's malfeasance, nonfeasance and misrepresentations resulted in the failure of CBG to fulfill material obligations of the Asset Purchase Agreement. Such failure

by CBG to fulfill material obligations of the Asset Purchase Agreement caused and resulted in the delay in closing on the Asset Purchase Agreement.

35. CBG and Weatherby engaged in these actions and inactions in bad faith and in an effort to capitalize on the potential increased valuation of WMNT set forth in the Greenhill Report.

36. CBG and Weatherby sent the CBG Termination Letter after accepting payments by Novia under the Local Marketing Agreement. These payments exceeded $90,000.

37. In addition to breaching the terms of the Asset Purchase Agreement, CBG never made any payments required under the Promissory Notes it executed with Novia and is in violation of those Promissory Notes. The Promissory Notes CBG executed allow Novia to accelerate all payments due under the Notes.

38. Orion has also likewise never made any payments under its Promissory Note with Novia and is in violation of its Promissory Note. The Promissory Note Orion executed permits Novia to accelerate all payments due under the Notes.

39. Weatherby has also intentionally interfered with Novia's prospective business relations by interfering with Novia's ability to sell certain assets of WMNT in the upcoming FCC auction on its own or in connection with other FCC license holders.

40. CBG's and Weatherby's actions were fraudulent and committed with actual malice.

## COUNT I

### (Breach of Asset Purchase Agreement)

### (Against Community Broadcast Group)

41. Novia incorporates the above averments as if fully set forth herein.

42. CBG executed an Asset Purchase Agreement with Novia on October 1, 2014.

43. The Asset Purchase Agreement is a binding and enforceable agreement.

8

44. CBG has breached multiple provisions of the Asset Purchase Agreement, including, but not limited to: (1) Section 1.3 Liabilities; (2) Section 4.3 No Conflict; (3) Section 4.6 Certain Station Assets; (4) Section 4.7 Contracts; (5) Section 4.10 Disclosure; (6) Section 4.11 Absence of Litigation: Taxes; (7) Section 4.12 No Other Agreements to Sell the Station; No Undisclosed Liabilities; and (8) Section 12.6 Further Assurances.

45. CBG further breached the Asset Purchase Agreement by making several misrepresentations in the Asset Purchase Agreement and failing to promptly take all steps necessary to close on the Asset Purchase Agreement.

46. CBG has also breached Section 12.1(b) of the Asset Purchase Agreement by improperly attempting to terminate the Asset Purchase Agreement because any delay in closing was due to CBG's failure to fulfill the material obligations set forth in the Asset Purchase Agreement.

47. As a result of CBG's breach of the Asset Purchase Agreement, Novia has incurred consequential damages, including attorneys' fees. Novia further requests that it be awarded all costs and expenses incurred as a result of CBG's improper attempted termination of the Asset Purchase Agreement.

## COUNT II

### (Specific Performance)

### (Against Community Broadcast Group)

48. Novia incorporates the above averments as if fully set forth herein.

49. On October 1, 2014, CBG entered into an Asset Purchase Agreement with Novia.

50. The Asset Purchase Agreement provides that WMNT is of "… a special, unique and extraordinary character, and that damages are an inadequate remedy for a breach of this Agreement." (Asset Purchase Agreement, ¶12.3)

51. The Asset Purchase Agreement further provides that "In any action to enforce the provisions of this Agreement, Seller shall waive the defense that there is an adequate remedy at law or equity and agree that [Novia] shall have the right to obtain specific performance of the terms of this Agreement without being required to provide actual damages, post bond or furnish other security."

52. The order of specific performance is required because the assets of WMNT are unique and cannot be fully compensated by an award of money damages.

53. The order of specific performance would not be oppressive upon CBG but would be consistent with the agreed upon terms of the Asset Purchase Agreement.

54. Accordingly, Novia respectfully requests that CBG be ordered to immediately comply with all terms of the Asset Purchase Agreement and be ordered to take all steps necessary to immediately proceed to close on the terms of the Asset Purchase Agreement.

## COUNT III

**(Declaratory Relief)**

**(Against CBG)**

**(Against Community Broadcast Group)**

55. Novia incorporates the above averments as if fully set forth herein.

56. CBG executed an Asset Purchase Agreement with Novia on October 1, 2014.

57. The Asset Purchase Agreement is a binding and enforceable agreement.

58. CBG attempted to improperly terminate the Asset Purchase Agreement on December 24, 2015.

59. As a result, Novia respectfully requests that the Court issue an Order declaring that CBG improperly terminated the Asset Purchase Agreement and further Order that the Asset Purchase Agreement is a binding and enforceable agreement between Novia and CBG.

## COUNT IV

### (Constructive Trust)

### (Against Weatherby and Community Broadcast Group)

60. Novia incorporates the above averments as if fully set forth herein.

61. Weatherby and CBG have improperly retained an interest to the assets of WMNT by improperly attempting to terminate the Asset Purchase Agreement CBG entered into with Novia or seeking to cause said Asset Purchase Agreement to be terminated.

62. As a result of Weatherby's and CBG's improper attempted termination of the Asset Purchase Agreement and the improper retention of the assets of WMNT, it would violate fundamental notions of fairness and equity if Weatherby and CBG were permitted to retain, use and/or authorize use of the assets of WMNT.

63. Accordingly, Novia respectfully requests that Weatherby and CBG submit the improperly retained assets of WMNT to the Court to be held in Constructive Trust during the pendency of this matter.

## COUNT V

### (Breach of August 21, 2013 Promissory Note)

### (Against Community Broadcast Group)

64. Novia incorporates the above averments as if fully set forth herein.

65. On August 21, 2013, CBG executed an Amended and Restated Promissory Note in favor of Novia.

66. CBG has made no payments required under the Amended and Restated Promissory Note.

67. CBG is in default of the Amended and Restated Promissory Note.

11

68. As a result of CBG's breach of the Amended and Restated Promissory Note, Novia is entitled to $125,000 plus interest accruing at the Default Rate of Eight Percent (8%) up to and including the time of judgment and all other costs and expenses provided for in the Amended and Restated Promissory Note.

## COUNT VI

**(Breach of October 1, 2014 Promissory Note)**

**(Against Community Broadcast Group)**

69. Novia incorporates the above averments as if fully set forth herein.

70. On October 1, 2014, CBG executed a Promissory Note in favor of Novia.

71. CBG has made no payments required under the Promissory Note.

72. CBG is in default of the Promissory Note.

73. As a result of CBG's breach of the Promissory Note, Novia is entitled to $10,525 and interest accruing at the rate of Eight Percent (8%) up to and including the time of judgment and all other costs and expenses provided for in the Promissory Note.

## COUNT VII

**(Breach of October 1, 2014 Promissory Note)**

**(Against Orion Media Management, LLC)**

74. Novia incorporates the above averments as if fully set forth herein.

75. On October 1, 2014, Orion entered into a Promissory Note with Novia.

76. Orion has made no payments required under the Promissory Note.

77. Orion is in default of the Promissory Note.

78. As a result of Orion's breach of the Promissory Note, Novia is entitled to $17,500 and interest accruing at the rate of Eight Percent (8%) up to and including the time of judgment and all other costs and expenses provided for in the Promissory Note.

12

## COUNT VIII

## (Tortious Interference With Business Relationship)

## (Against Community Broadcast Group and Weatherby)

79. Novia incorporates the above averments as if set forth herein.

80. Novia had a prospective business relationship with certain third parties regarding the sale or sharing of WMNT's spectrum that Novia would have owned and controlled under the Asset Purchase Agreement.

81. Weatherby and CBG were aware of Novia's prospective business relationship with these parties.

82. Weatherby and CBG intentionally interfered with Novia's prospective business relationship through the multiple breaches of the Asset Purchase Agreement and by improperly attempting to terminate the Asset Purchase Agreement.

83. Weatherby's and CBG's actions were done intentionally.

84. Novia has been damaged by Weatherby's and CBG's intentional interference with its prospective business relationships.

## COUNT IX

## (Fraud)

## (Against Community Broadcast Group and Weatherby)

85. Novia incorporates the above averments as if set forth herein.

86. During the course of Weatherby's discussions with Novia after the execution of the Asset Purchase Agreement, Weatherby indicated to Novia that CBG was capable of and intended to close on the Asset Purchase Agreement. However, subsequent to issuing such reassurances to Novia and while continuing to collect benefits from Novia, Weatherby and CBG plotted to attempt to terminate the Asset Purchase Agreement. Moreover, Weatherby

13

and CBG further plotted to use Novia to extinguish all rights and claims of certain minority shareholders against CBG and Weatherby prior to such attempted termination of the Asset Purchase Agreement.

87. Weatherby and CBG did not give Novia notice of the attempted termination until after Novia had accomplished the dismissal of all claims with prejudice by certain minority shareholders against CBG and Weatherby.

88. Weatherby and CBG attempted to utilize the conduct described in Paragraphs 86 and 87 to dramatically increase Weatherby's ownership share in CBG.

89. Weatherby's and CBG's statements and representations were made falsely with knowledge of their falsity or with such utter disregard and recklessness as to whether it was true that Weatherby's and CBG's knowledge may be inferred.

90. Weatherby and CBG did this in an intentional effort to void the Asset Purchase Agreement in an effort to dramatically increase Weatherby's percentage ownership in CBG and capitalize on the potential increased value of WMNT set forth in the Greenhill Report.

91. Weatherby's and CBG's misrepresentations were material to the transaction.

92. Novia justifiably relied on Weatherby's and CBG's misrepresentations and intentional omissions by, among other things: (i) offering sufficient consideration to certain minority shareholders of CBG to obtain a dismissal with prejudice of the Litigation in favor not only of Novia but also Weatherby and CBG; (ii) not foreclosing on the Promissory Notes Novia provided to CBG; (iii) not foreclosing on the Promissory Note Novia provided to Orion (an entity owned and controlled by Weatherby); and (iv) continuing to make payments to CBG pursuant to the Local Marketing Agreement.

93. It is further believed that Weatherby has utilized monies provided under the Promissory Notes and Local Marketing Agreement to cover Weatherby's personal expenses not related to the operation of WMNT.

94. Weatherby's and CBG's actions, as described in Paragraphs 86-88, were done intentionally and with actual malice.

95. Novia has been damaged as a result of CBG's and Weatherby's fraud.

**PRAYER FOR RELIEF**

A. That Novia be awarded all damages (including attorneys' fees), costs and expenses that resulted from CBG's violation of the Asset Purchase Agreement;

B. That the Court enter an Order that CBG's attempted termination of the Asset Purchase Agreement violated the terms of the Asset Purchase Agreement;

C. That the Court enter an Order that the Asset Purchase Agreement is a valid and enforceable agreement between Novia and CBG;

D. That CBG be ordered to comply with and immediately move to close on the Asset Purchase Agreement;

E. That CBG pay all principal, interest, costs and expenses pursuant to the Promissory Notes it executed in favor of Novia;

F. That Orion pay all principal, interest, costs and expenses pursuant to the Promissory Note it executed with Novia;

G. That CBG's interest in the assets of WMNT be placed in Constructive Trust;

H. That Novia be awarded all compensatory damages that resulted from Defendants' actions;

I. That Novia be awarded punitive damages as a result of Defendants' actual malice and intentional and reckless actions;

J. That Novia be awarded its costs, expenses and attorneys' fees in this action; and,

K. That the Court order any further relief that may be just and reasonable.

          Respectfully submitted,

          /s/*John C. Barron*
          John C. Barron (0003233)
          Gregory H. Wagoner (0076132)
          SHUMAKER, LOOP & KENDRICK, LLP
          1000 Jackson Street
          Toledo, Ohio 43604
          TEL: (419) 241-9000
          FAX: (419) 241-6894
          Email: jbarron@slk-law.com
                 gwagoner@slk-law.com

          Attorneys for Plaintiff,
          Novia Communications, LLC

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

          Respectfully submitted,

          */s/John C. Barron*
          John C. Barron (0003233)
          Gregory H. Wagoner (0076132)
          SHUMAKER, LOOP & KENDRICK, LLP

          Attorneys for Plaintiff,
          Novia Communications, LLC