UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Novia Communications, LLC,                          Case No. 3:16-cv-587

       Plaintiff

       v.                                       MEMORANDUM OPINION

Jesse Weatherby, et al.,

       Defendants


## I.    INTRODUCTION

Before me is the motion for reconsideration filed by Defendant Community Broadcast Group, Inc. ("CBG"). (Doc. No. 26). Plaintiff Novia Communications, LLC filed a memorandum in opposition, (Doc. No. 29), and CBG replied, (Doc. No. 32).

## II.    BACKGROUND

On or around October 1, 2014, CBG and Novia entered into the Asset Purchase Agreement ("APA"), under which Novia would purchase certain "Station Assets" from CBG. (Doc. No. 16-2). But due to issues that arose, the Closing never occurred. On December 24, 2015, CBG exercised its contractual right to terminate the APA since Closing had not occurred within 270 days of the execution of the APA. (Doc. No. 16-2 at 17, 67).

In the interim, on March 16, 2015, CBG and Novia executed another contract, the Local Marketing Agreement ("LMA"). (Doc. No. 16-2 at 50-66). "One of the purposes of the LMA was to provide CBG with certain financial assistance between the start of the LMA and the closing of the APA so as to assure that the Class A television station WMNTCA (n/k/a WMNT-CD) operated by CBG remained in operation pending FCC approval of the application for consent to the Assignment of the Station from CBG to Novia." (Doc. No. 19 at 21-22 (citing Doc. No. 16-2 at 2)).

As such, one of the terms of the LMA was that Novia would make payments to CBG, designated as the "Reimbursable Operating Expense." (Doc. No. 1-6 at 19; Doc. No. 16-2 at 53-55; Doc. No. 26 at 3). Novia made these payments until and following CBG's termination of the APA.

After CBG terminated the APA, Novia filed suit against CBG, asserting, among other things, a claim for breach of the APA. (Doc. No. 1). Novia and CBG subsequently filed cross motions for summary judgment on the breach of contract claim.[1] (Doc. Nos. 16 & 17). While I determined CBG had not breached the contract, I concluded equitable estoppel applied to bar CBG from terminating the APA. (Doc. No. 24). CBG then filed a motion for reconsideration, asserting I erred in applying equitable estoppel. (Doc. No. 26).

### III. STANDARD

The parties have assumed Rule 59(e) applies to this motion for reconsideration. But because neither party moved for final judgment under Rule 54(a) and claims remain in this litigation following my previous ruling, the proper mechanism is a motion under Rule 54(b). I say this merely for clarity since the standard is nearly identical for both a Rule 54(b) and Rule 59(e) motion, and further briefing to address this procedural error is not necessary.

Rule 54(b) provides that any order or decision, other than a "final judgment" entered as described in the text of the Rule, "that adjudicates fewer than all the claims . . . of fewer than all the parties does not end the action as to any of the claims or parties . . . may be revisited at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio

---

[1] Both Novia and CBG also moved for summary judgment on the counts of specific performance and declaratory judgment of the APA, and CBG and Defendant Jesse Weatherby moved for summary judgment on a fourth count, a constructive trust claim. (Doc. Nos. 16 & 17). But these claims are dependent upon the breach of contract claim.

2

1998) (*citing Petition of U.S. Steel Corp.*, 479 F.2d 489 (6th Cir. 1973), *cert. denied, Fuhrman v. U.S. Steel Corp.*, 414 U.S. 859 (1973)); *see also Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (*citing Marconi Wireless Tel. Co. of Am. v. United States*, 320 U.S. 1, 47-48 (1943) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.")).

## IV. DISCUSSION

CBG moves for reconsideration of my conclusion that equitable estoppel applies to bar CBG from exercising its contractual right to terminate the APA. CBG argues first that Novia failed to establish the *prima facie* elements of equitable estoppel. In the alternative, CBG asserts that even if there was a misrepresentation, the "no-waiver" clause must be enforced. Although CBG failed to raise this second argument at the outset, because it is fully briefed before me now, I will address the merits of its argument at this time. *See, e.g., Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 391 (6th Cir. 2003) (considering an argument on appeal that "was squarely before the district court on the motion for reconsideration and was briefed by both parties.").

### A. EFFECT OF "NO-WAIVER" CLAUSE

Citing *Flushing Unique Homes, LLC v. Brooklyn Federal Savings Bank*, 954 N.Y.S.2d 606, 608 (2d Dep't 2012), which I cited in my previous opinion, CBG argues the "no-waiver" clause bars equitable estoppel here. But the "no waiver" clause in *Flushing* is distinguishable from the clause here. The *Flushing* clause provided, " '[n]either the exercise of any provision hereof nor the delay in asserting any right granted to [the Bank] ... shall be construed as a waiver by [the Bank] of the right to accelerate the indebtedness ... or to pursue any other remedies available under this Note,' and that '[a]ny waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought.' " *Id.* The clause at issue here makes no such explicit reference to delay.

Further, "waiver" and "estoppel" are distinct legal concepts and must not be conflated. As one New York court stated,

3

> "A waiver is 'the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it' " (*Werking v. Amity Estates,* 2 N.Y.2d 43, 52, 155 N.Y.S.2d 633, 137 N.E.2d 321, *appeal dismissed, cert. denied* 353 U.S. 933, 77 S.Ct. 812, 1 L.Ed.2d 756, quoting Whitney, Contracts, at 273 [4th ed]; *see, Frontier Ins. Co. v. State of New York,* 197 A.D.2d 177, 183, 610 N.Y.S.2d 647). "An estoppel, on the other hand, may be imposed by law in the interest of fairness where one party, justifiably relying upon the word or conduct of another, changes its position to its detriment" (*Inter–Power of New York v. Niagara Mohawk Power Corp.,* 213 A.D.2d 110, 114, 630 N.Y.S.2d 584; *see, Nassau Trust Co. v. Montrose Concrete Prods. Co.,* 56 N.Y.2d 175, 184, 451 N.Y.S.2d 663, 436 N.E.2d 1265).

*England v. Nettesheim*, 634 N.Y.S.2d 797, 798-99 (3d Dep't 1995). Novia does not claim CBG waived the right to terminate, but instead should be estopped from exercising its right to terminate. As such, I refuse to apply the boilerplate "no waiver" clause to the issue of equitable estoppel.

**B.** **PRIMA FACIE ELEMENTS**

Neither party disputes the accuracy of the legal standard of equitable estoppel articulated in my previous opinion. To reiterate, I stated,

> Estoppel requires conduct by both the party seeking estoppel and the party to be estopped. *See BWA Corp. v. Alltrans Express U.S.A.*, 112 A.D.2d 850, 853, 493 N.Y.S.2d 1 (1st Dep't 1985); *In re DiLasco v. Tilden Glen Head, Inc.*, 69 A.D. 3d 1171, 1172, 894 N.Y.S.2d 203 (3d Dep't 2010). The party to be estopped must have: (1) made a false representation or concealed material facts; (2) had actual or constructive knowledge of the real facts; and (3) had the intention or expectation that the other party would rely and act on the false or concealed facts. *See BWA Corp.*, 112 A.D.2d at 853; *DiLasco*, 69 A.D. at 1172. The party seeking estoppel must have: (1) been unaware of the real facts; and (2) materially changed its position to its substantial detriment, in reliance on the other party's conduct. *See BWA Corp.*, 112 A.D.2d at 853; *DiLasco*, 69 A.D. at 1172.

(Doc. No. 24 at 9). As to the party to be estopped, CBG asserts I erred in concluding Novia had proven CBG "made a false representation or concealed material facts." Regarding the party seeking estoppel, CBG argues Novia failed to establish either element.

The crux of this analysis is whether CBG's *silence* regarding the "real fact" that it intended to reserve the right to terminate the APA under the 270-day provision constitutes a "material misrepresentation" for purposes of equitable estoppel.

Equitable estoppel by silence does not require a "fraudulent intention of deceiving." *Rothschild v. Title Guarantee & Trust Co.*, 204 N.Y. 458, 462 (1912). Instead, "[i]ts existence requires

4

that the party against whom it acts remained silent when he had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon, and that action would be taken or omitted which his statement of the truth would prevent, and that injury of some nature or in some degree would result." *Id.* (further citation omitted). In short, to establish equitable estoppel by silence, there must be "a duty to speak, a failure to speak and damage to another party directly due to this silence." *LaPorto v. Vill. of Philmont*, 39 N.Y.2d 7, 12 (1976); *see also* 57 N.Y. Jur. 2d Estoppel, Etc. § 18 (2018).

CBG is correct in its assertion that it had no duty under the APA to notify Novia of its intent to terminate. (Doc. No. 32 at 7). But the LMA established a "duty to consult," stating,

> Each party will use its best efforts not to take any action that would unreasonably interfere with, threaten or frustrate the other party's purposes or business activities, and each party will keep such other party informed of, and will coordinate with such other party regarding, any activities that may have a material effect upon such other party.

(*Id.* at 60).[2] Accordingly, under the LMA, CBG had a "duty to speak" with respect to "any activities that may have a material effect upon" Novia.

CBG's silent acceptance of payments for six months after the right was triggered[3] may be at odds with the spirit of the duty to consult. But the relevant inquiry is whether the duty to consult required CBG to communicate an intent to reserve the right to terminate under the 270-day provision during the six-month timeframe. After much deliberation, I conclude it did not.

The APA granted both parties the right to terminate if Closing had not occurred within 270 days. (Doc. No. 16-2 at 17). With knowledge of this right, Novia executed the LMA and continued

---

[2] Though CBG encourages that the APA be considered independently of the LMA and payments under it, the two contracts are intricately entwined, as evident by the language of the LMA, which states, "This Agreement, the Purchase Agreement and the agreements referenced in Section 13.6 of the Purchase Agreement constitute the entire agreement of the parties with respect to its subject matter[.]" (Doc. No. 16-2 at 60). Accordingly, the two must be read in concert when considering this business relationship.

[3] The right to terminate was triggered on or about June 28, 2015 – 270 days after the execution of the APA. CBG terminated the APA on December 24, 2015.

5

to make payments for six months after the right was triggered. Other than accepting these payments, there is no evidence that CBG made any effort to conceal the fact that the right to terminate under the APA's 270-day provision remained in effect.

Further, contrary to my previous conclusion, CBG's acceptance of payment and delay does not give rise to equitable estoppel here. Had Novia known CBG intended to *exercise* this right, Novia may have terminated the LMA rather than continuing to make payments. But since the right existed at the time the LMA was executed and the LMA did not condition or eliminate it, it cannot be fairly said that Novia changed position in reliance on CBG's silence regarding its intent to reserve this contractual right. Any detriment Novia experienced because of its mistaken belief cannot be attributed solely to CBG's silence.

As such, while CBG did owe a heightened duty of care under the LMA, CBG had no duty to remind Novia, a sophisticated business entity, of the 270-day provision clearly set forth in the APA or convey any intent to reserve this contractual right. Because Novia failed to establish CBG had a "duty to speak," the claim of equitable estoppel must fail. *See Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 90 (2d Cir. 2013) ("[A] party's silence does not give rise to a claim of equitable estoppel when the party has no duty to speak.").

Accordingly, while I am still troubled by CBG's delay in exercising the right to terminate and its silent acceptance of payments, especially in light of the LMA's duty to consult, reconsideration is warranted here. Since Novia has failed to establish all of the elements of equitable estoppel by record evidence, CBG must be awarded summary judgment on this claim.

## V. CONCLUSION

For the foregoing reasons, CBG's motion for reconsideration is granted, and CBG is awarded summary judgment on this claim.

So Ordered.

                                               s/ Jeffrey J. Helmick
                                               United States District Judge